IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA A. JARAMILLO,

        Plaintiff,

v.                                          CIV. No. 97-1696 JP/LFG

PLAINS ELECTRIC GENERATION AND
TRANSMISSION COOPERATIVE, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

On December 30, 1998 a hearing was held on Plaintiff's Motion for Continuance (Doc. No. 57), filed December 4, 1998. Doug Foster represented the Plaintiff, and Christopher Moody and Whitney Warner represented the Defendant. At the hearing I stated that the motion should be granted and the January 12, 1999 trial setting should be vacated. The trial is rescheduled on a trailing calendar to begin May 10, 1999.

On November 2, 1998, Plaintiff filed her motion for reconsideration of my October 28, 1998 order granting Defendant's motions in limine (Doc. No. 37). I stated that the motion to reconsider should be denied with respect to the motion in limine to exclude the testimony of Jerry Timmons, Laura Moya, and Angelo Malta. I withheld ruling on the motion to reconsider the second motion in limine regarding evidence of harassment of which the Plaintiff was not aware.

On November 5, 1998, Defendant filed its Motion for Summary Judgment (Doc. No.

39).[1]  In ruling on the motion for summary judgment, I have not relied upon the depositions of Jerry Timmons, Laura Moya, and Angelo Malta for the reasons explained in my Order entered October 28, 1998.

## DISCUSSION

### A. Motion for summary judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F. 2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. Id.

### 1. "Sham" factual issues

Defendant argues that any genuine issue of material fact created by Plaintiff's deposition on Plaintiff's claim of retaliation by David Rostro is merely a "sham" because her deposition testimony contradicts Plaintiff's prior affidavit. The history of Plaintiff's testimony regarding Rostro is as follows.

---

[1]In support of her response brief to Defendant's motion for summary judgment, Plaintiff submitted approximately 90 pages of exhibits. I admonish Plaintiff's counsel to read and to comply with D.N.M. LR-Civ. 10.5.

On October 8, 1996, Plaintiff made a statement in a transcribed interview with Defendant's counsel, Chris Moody, in reference to a case filed by Velma Lechuga against Defendant Plains Electric. Plaintiff was not under oath during that interview.[2] On October 9, 1996, Plaintiff submitted her resignation to Defendant and her last day at work was October 11, 1996. On October 17, 1996, Plaintiff's signed an affidavit in which she stated: "I consider Mr. Rostro a good boss and I do not think he has been unfair to me or to any other employee at Plains. I know of nothing to indicate that Mr. Rostro discriminated in any way against Ms. Lechuga or any other employee of Plains." Defendant's Motion for Summary Judgment, Appendix A, Exh. 14 at ¶14. This testimony was consistent with the statement Plaintiff had made in her interview with Mr. Moody.

In her subsequent deposition in this case, taken July 13, 1998, Plaintiff stated that Mr. Rostro had in fact harassed her, discriminated against her on the basis of her sex, and retaliated against her for her refusal to help Rostro retaliate against Velma Lechuga. She stated that at the time of her October 8, 1996 interview and October 17, 1996 affidavit testimony she was still

---

[2]During the interview, Mr. Moody and Plaintiff had the following exchange regarding David Rostro:
    Q. He's a good boss to work for, isn't he?
    A. He is a good boss. He's the type that doesn't want to know what's going on. "Let's get it done." You know, he's not really going to go and stick his nose in there . . . .
    Q. Did Velma [Lechuga] ever tell you that she though Dave Rostro was discriminating against her?
    A. No. I don't even know why she would say that. I mean, how? What do you mean?
    Q. I don't know.
    A. Discriminating as far as— well, she never said that to me, anyway.
    Q. And you never saw anything that would indicated to you any kind of discrimination there?
    A. Not as—I mean, I think that her job was looked at fairly, as long—but the same thing as my own.

3

employed or hoped to be rehired by Defendant and that she feared that she would lose her job or would not be rehired for part time work if she said unfavorable things about Rostro. Jaramillo depo at pp.117, 132. Plaintiff also explained that at the time of the October, 1996 statements, she had understood the word "discrimination" to mean racial discrimination and did not believe it to encompass gender discrimination or sexual harassment. Jaramillo depo. at p. 116. When confronted with her earlier interview statements, Plaintiff explained that they were not outright lies, but that she had not answered the questions fully. Id. at pp. 176-77, 195-96. In contrast, Plaintiff said regarding Paragraph 14 of her earlier sworn affidavit, "I knew that I had to be careful how I responded to some of these. I was afraid for my job." Id. at p. 132. When pressed as to whether Paragraph 14 of the affidavit was true or untrue, Plaintiff equivocated and finally stated that Paragraph 14 was untrue but that she signed it to protect herself and her job. Id. at pp. 133-34.

In Franks v. Nimmo, 796 F.2d 1230 (10th Cir. 1986), the Tenth Circuit examined the issue of when a litigant's sworn testimony should be disregarded due to inconsistencies with prior sworn testimony. In Franks, the plaintiff testified at a preliminary injunction hearing. Later, after summary judgment was entered against the plaintiff, he filed a motion to reconsider and attached an affidavit in which he reversed his prior sworn testimony. The court found that plaintiff was trying to avoid summary judgment by creating a sham factual issue. Franks, 796 F.2d at 1247. See also Aircraft Sales of California, Inc. v. Insured Aircraft Title Serv., Inc., NO. 90-6125, 1991 WL 274101, at **4-5 (10th Cir., Dec. 18, 1991) (finding sham factual issue when plaintiff submitted affidavit contradicting earlier deposition only after defendant filed motion for summary judgment). The court stated that in determining whether a factual issue is a sham, courts should

4

examine (1) whether the witness was cross-examined during her earlier testimony, (2) whether the witness had access to the pertinent evidence at the time of her earlier testimony or whether the more recent testimony was based on newly discovered evidence, and (3) whether the earlier testimony reflects confusion which the more recent testimony attempts to explain. Franks, 796 F.2d at 1237.

Under the standard set forth in Franks, Plaintiff's deposition testimony does not create a sham issue of material fact. Although the Plaintiff's deposition testimony is not based on new information, but rather on information that she had at the time she filed her affidavit, Plaintiff was not cross examined during her prior sworn testimony, which was the affidavit. In addition, Plaintiff's deposition testimony does—to a certain extent—explain statements she made in her affidavit. For example, Plaintiff explained that when she stated that Rostro did not discriminate against Rostro, she understood "discrimination" to mean racial animus. She did not understand the word discrimination to mean gender bias or sexual harassment. Jaramillo depo. at pp. 116, 118. In addition, Plaintiff has revealed that she was under medication at the time of her interview and affidavit, which muddled her ability to think clearly. Id. at p. 196 (correction page). Plaintiff's testimony about her befuddled state of mind is corroborated by the deposition testimony of Velma Lechuga. Plaintiff's Exh. 5, Lechuga depo. at pp. 29-30.

In contrast to the situation in Franks, Plaintiff's deposition was not taken in response to the threat of summary judgment. Furthermore, unlike Franks, Plaintiff's prior contradictory affidavit was not filed in her own case, but in that of one of her co-workers. Plaintiff has explained that when she signed the affidavit, she still hoped to be employed with Defendant in the future and was afraid to fully explain her answers in fear of retaliation. Jaramillo depo. at p. 132.

In addition, Plaintiff had informed OHMS representative Mary Ann Neldon that she had grounds for EEO claims against David Rostro and Defendant in August of 1996, two months before her interview and sworn affidavit. Jaramillo Affidavit at ¶7. Under these facts, Plaintiff's self-contradiction does not create a "sham" factual issue, and Defendant's motion for summary judgment on that ground should be denied. It will be up to a jury to determine the credibility of Plaintiff's testimony in light of her contradictory interview and affidavit.

**2. Timeliness of Plaintiff's harassment, hostile work environment and retaliation claims**

Defendant argues that Plaintiff's harassment, hostile work environment and retaliation claims should be dismissed because they are untimely. Defendant contends that Plaintiff did not experience any discrimination or retaliation during the 300 day period before she filed her charge with the EEOC and that consequently the continuing violation doctrine does not apply.

In order to preserve her rights under Title VII, a plaintiff must file a charge with the Equal Employment Opportunity Commission within 300 days of an unlawful employment practice. 42 U.S.C. § 2000-e(5)(e)(1). One exception to this rule is the continuing violation doctrine, which allows plaintiffs to recover for discrimination that occurred before the 300 day period if at least one act of discrimination occurred within the charge filing period and the earlier acts of discrimination were "part of a continuing policy or practice that includes the act or acts within the statutory period." Mascheroni v. Board of Regents of the Univ. of California, 28 F.3d 1554, 1561 (10th Cir. 1994) (quoting Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993)). To take advantage of the continuing violation doctrine, a plaintiff must demonstrate "either (1) a series of related acts taken against a single individual, one or more of

which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir. 1993).

In this case, Plaintiff argues that Defendant maintained a company-wide policy of discrimination, harassment, and retaliation. To establish substantive liability, Plaintiff must allege and prove that at least one discriminatory act or application of the policy occurred within the 300 day filing period. As the Tenth Circuit explained in Furr v. AT&T Tech., Inc.:

> Plaintiff[] may bring suit for one or more discriminatory acts occurring before the limitations period, and may recover damages based on those injuries "if the plaintiff can demonstrate that the practice has actually continued into the 'present'—that is, into the time period relevant to the date the charge of discrimination was filed. At least one discriminatory act must have occurred within the charge-filing period."

824 F.2d 1537, 1544 (10th Cir. 1987) (quoting Stewart v. CPC International, Inc., 679 F.2d 117, 121 (7th Cir. 1982)). In this case, Plaintiff filed her charge of discrimination with the EEOC on August 6, 1997, exactly 300 days after her final day of work at Plains Electric on October 11, 1996.

Plaintiff has failed to meet her burden of showing that Defendant maintained a company-wide policy of harassment and hostile work environment during the filing period. In this regard, Plaintiff relies solely on the deposition testimony of Randy Lovato, who was employed at Defendant Plains Electric during the relevant time period. Mr. Lovato testified that the Chief Executive Officer of Plains Electric, David Highers, worked at Plains Electric from May of 1994 until December of 1996. Plaintiff's Exhibit 2, Lovato Deposition at p. 4. Lovato stated that Highers may have made a racially insulting comment to Lovato during the charge filing period. Lovato's testimony was as follows:

7

> Q. When do you think was the last time you can recall before Mr. Highers departed Plains that he made a comment of that nature to you, a personally insulting, demeaning comment about you and your Hispanic heritage?
> A. Oh, maybe a couple of months before.
> Q. A couple months before he left? Before he left?
> A. Probably, yeah.
> Q. Something like October, November of 1996?
> A. Maybe. By then, I guess it was just going over my head.

Id. at p. 82. This vague testimony regarding an indeterminate statement made on an uncertain date is, by itself, insufficient to establish a company-wide policy of harassment or discrimination during the filing period and cannot support Plaintiff's claim. Moreover, although a statement disparaging Mr. Lovato's Hispanic heritage certainly would be reprehensible, such a statement is unrelated to gender discrimination, harassment, or hostility. Consequently, Plaintiff's claims of harassment and hostile work environment should be dismissed.

Defendant also argues that Plaintiff's claim of retaliation is untimely because Defendant did not commit a retaliatory act during the charge filing period. Plaintiff has alleged that her supervisor, David Rostro, retaliated against her in various ways during her employment with Defendant. However, Plaintiff has not sufficiently alleged or proven a retaliatory act by Defendant during the charge filing period. In her deposition, Plaintiff stated that she believed that David Rostro's decision not to rehire her at Plains Electric was in retaliation for her testimony in Velma Lechuga's case against Defendant. Jaramillo Depo. at 173. In certain circumstances, a failure to rehire may constitute an "adverse employment action" for the purposes of a retaliation claim. See Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981), cert. denied, 455 U.S. 1000 (1982). However, Plaintiff does not point to, and I cannot find, any evidence that Plaintiff sought to be reemployed in a position for which she was qualified

and Defendant failed to rehire her during the 300 day charge filing period. There is no evidence to support a claim that Defendant retaliated against Plaintiff during the charge filing period. Consequently, Plaintiff cannot avail herself of the continuing violation doctrine and her retaliation claim should be dismissed.[3]

### 3. Constructive discharge claim[4]

Defendant argues that Plaintiff's constructive discharge claim should be dismissed because no reasonable person would find that the mistreatment she alleges was so intolerable that the person would resign because of it.

In order to state a constructive discharge claim, a plaintiff must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed her working conditions as intolerable. See Derr v. Gulf Oil Corp., 796 F.2d 340, 343-44 (10th Cir. 1986). The plaintiff's subjective view of the employment environment and the employer's subjective

---

[3]Defendant makes additional arguments, including that Plaintiff fails to set forth sufficient evidence of the severity and pervasiveness of her hostile work environment, and that Defendant is entitled to the affirmative defense set forth by the Supreme Court in Burlington Indus., Inc. v. Ellerth, 118 S.Ct. 2257 (1988) and Faragher v. City of Boca Raton, 118 S.Ct. 2275 (1998). Because I have already ruled that Plaintiff's claims of hostile work environment, harassment, and retaliation should be dismissed, I do not reach these additional arguments.

[4]In Paragraph 11 of her complaint, Plaintiff stated "After briefly returning to work full-time, the plaintiff concluded that Mr. Rostro's prior and continuing *harassment*, together with the *hostile environment* at Plains under Mr. Highers' leadership, rendered full-time employment at Plains untenable..." (emphasis added). In her response to Defendant's motion for summary judgment, however, Plaintiff contends that her constructive discharge claim is based not on hostile work environment or Rostro's harassment of her, but rather upon Rostro's continuing *retaliation* against her. Defendant's frustration at this apparent change of gears by Plaintiff is understandable. However, the discrepancy is irrelevant. The relevant inquiry is not the type of misconduct directed at Plaintiff or what type of claim that misconduct supports, but whether that misconduct justifiably caused her to terminate her employment with Defendant.

9

intent with regard to discharging her are both irrelevant. See id. If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged. See Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997), cert. denied, 118 S.Ct. 1515 (1998). "Essentially, a plaintiff must show that she had 'no other choice but to quit.' " Id. (quoting Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992)).

In this case, Plaintiff claims that her supervisor, David Rostro, did not take her complaints about work seriously, ignored her during meetings, asked her to "keep a calendar" on Velma Lechuga in retaliation for Ms. Lechuga's protected activities, and treated her differently than male coworkers. Jaramillo depo. at pp. 139-140, 168-69, 171-72. She also claims that when she returned to work after an extended leave of absence that had resulted from an assault, the situation had worsened. Specifically, she claims that work she had been told was being performed during her absence sat waiting for her when she returned; that Rostro did not want to talk to her; that Rostro would tell her what his expectations of her were, but then say something different to others; and that her supervisory duties had been taken away. Id. at pp. 140-41, 146-48.

Plaintiff's allegations in support of her claim of constructive discharge, though not particularly robust, are enough to withstand summary judgment. It will be up to a jury to determine whether Plaintiff would reasonably have felt that she had no other choice but to quit her employment with Defendant. Defendant's motion to dismiss Plaintiff's constructive discharge claim should be denied.

**B. Plaintiff's Motion for Reconsideration**

In Plaintiff's Motion for Reconsideration filed November 2, 1998 (Doc. No. 37), she asks

me to reconsider my October 28, 1998 Memorandum Opinion and Order in which I granted Defendant's motions in limine. I have already denied Plaintiff's motion to reconsider that portion of my Memorandum Opinion and Order ruling on the admissibility of the testimony of Jerry Timmons, Laura Moya, and Angelo Malta.

I now address the portion of the Memorandum Opinion and Order in which I granted Defendant's "Motion in Limine to Exclude Evidence of Other Harassment and Claims." In granting the motion in limine, I stated that harassment of which a plaintiff was unaware during her employment could not contribute to a plaintiff's hostile work environment. However, Plaintiff's claims for hostile work environment and retaliation have been dismissed as untimely. Consequently, Plaintiff's Motion for Reconsideration of this portion of the Memorandum Opinion and Order is now moot and should be denied.

IT IS THEREFORE ORDERED that:

(2) Plaintiff's Motion for Continuance (Doc. No. 57) is GRANTED and the January 12, 1998 jury trial is VACATED;

(3) Jury trial is rescheduled on a trailing calendar beginning May 10, 1999;

(4) Plaintiff's Motion for Reconsideration (Doc. No. 37) is DENIED;

(5) Defendant's Motion for Summary Judgment (Doc. No. 39) is GRANTED with respect to Plaintiff's claims of hostile work environment, harassment, and retaliation, which will be dismissed with prejudice; and

(6) Defendant's Motion for Summary Judgment (Doc. No. 39) is DENIED with respect to Plaintiff's claim of constructive discharge.

_____
**UNITED STATES DISTRICT JUDGE**