
FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY - 3 1999

CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BARBARA JARAMILLO,

        Plaintiff,

v.                                NO. CIV 97-1696 JP/LFG

PLAINS ELECTRIC GENERATION AND
TRANSMISSION COOPERATIVE, INC.,

        Defendant.

### DEFENDANT'S REQUESTED FINDINGS OF FACT
### AND CONCLUSIONS OF LAW

Defendant Plains Electric Generation and Transmission Cooperative, Inc.

("Plains") requests that the Court make the following Findings of Fact and

Conclusions of Law:

### FINDINGS OF FACT

The Court makes the following findings of fact:

1.      Plaintiff Barbara Jaramillo is a female of Hispanic origin.

2.      Defendant Plains is a New Mexico corporation which at all times

material hereto had 15 or more employees.  In fact, at all times material hereto

Plains had between 200 and 300 employees.

3.      Plaintiff filed her employment discrimination charge with the Equal

Employment Opportunity Commission ("EEOC") complaining of sex and race

discrimination at Plains and her constructive discharge from Plains on August 6,

1997.



1

4.   For her August 6, 1996 EEOC charge to be timely, Plaintiff's claim for constructive discharge must have accrued no earlier than three hundred days before August 6, 1997, or October 10, 1996.

5.   Plaintiff's last day of work at Plains was October 11, 1996.

6.   Plaintiff submitted her resignation to Plains on October 9, 1996.

7.   Plaintiff's EEOC charge was untimely and her constructive discharge claim should be dismissed with prejudice.

## CONCLUSIONS OF LAW

Based on the foregoing, the Court makes the following conclusions of law:

1.   Plaintiff is a person within the meaning of 42 U.S.C. § 2000e-(a).

2.   Plains is an employer within the meaning of 42 U.S.C.§ 2000e-(b).

3.   Plaintiff's claim for constructive discharge on the basis of sex and/or race accrued on the date she tendered her resignation, October 9, 1996. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110-11 (9th Cir. 1998); *Mayo v. Kenwood Country Club, Inc.* No. 97-4007, 1998 U.S.App. LEXIS 30110, *5-6 (6th Cir. Nov. 23, 1998); *Peterson v. Insurance Co. of North America*, 40 F.3d 26, 28 (2nd Cir. 1994); *Legoff v. Trustees of Boston Univ.*, 23 F.Supp.2d 120, 128 n.3 (D.Mass. 1998); *Nichols v. American National Ins. Co.*, 945 F.Supp. 1235,1239 (E.D.Mo. 1996), *decision granting new trial, but accepting premise that claim accrues upon tender of resignation,* 154 F.3d 875 (8th Cir. 1998); *Wilson v. Reno County*, 1990 U.S.Dist. LEXIS 18236, *13-14 (D.Kan. Dec.19, 1990).

4.   To be timely, Plaintiff's EEOC charge was required to be filed with EEOC no more than 300 days after October 9, 1996. 42 U.S.C. § 2000e-5(e).

2

Thus, the last day for Plaintiff to file a timely charge of constructive discharge was August 5, 1997.

5.     Plaintiff's EEOC charge filed on August 6, 1997 was, therefore, untimely and a timely EEOC charge is a statutory prerequisite to this suit. *Delaware State College v. Ricks*, 449 U.S. 250 (1980).

6.     This suit is time barred and Plaintiff's claim of constructive discharge is hereby dismissed with prejudice.  Because the constructive discharge claim is the only remaining claim, judgment shall be entered for Plains.

Respectfully submitted,

NOEDING & MOODY, P.C.

By _____
     Christopher M. Moody
     Whitney Warner
4300 San Mateo Blvd. NE, Suite B260
Albuquerque, NM 87110
(505) 878-0515
**ATTORNEYS FOR DEFENDANT
PLAINS ELECTRIC GENERATION
& TRANSMISSION COOPERATIVE,
INC.**

We hereby certify that we have served via mail a true
and correct copy of the foregoing pleading upon the
following opposing counsel of record this 3d
day of May, 1999:

J. Douglas Foster, Esq.
Foster, Johnson, Harris, McDonald
P. O. Box 25706
Albuquerque, NM  87125-5706

NOEDING & MOODY, P.C.

_____

3



Source:Labor Cases, Federal and State
Type:  ○ Boolean ● FREESTYLE ™

accrual of constructive discharge claim      New Search

**Search**

**Get a Document**

**Check a Citation**

prev · Document 8 of 100 · next

Cite List          KWIC™

FOCUS                           More Like This

SHEPARD'S®                                               Text Only | Print, Download, Email, Fax

*1990 U.S. Dist. LEXIS 18236, \**

MICHELLE WILSON, Plaintiff, v. RENO COUNTY, KANSAS; JUDY SELTZER, DIRECTOR, RENO COUNTY HEALTH DEPARTMENT; and KAY RAYL, ADMINISTRATIVE ASSISTANT TO RENO COUNTY COMMISSIONERS, Defendants

Civil Action No. 88-1641-T

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

1990 U.S. Dist. LEXIS 18236

December 19, 1990
December 19, 1990, Filed

**CORE TERMS:** patient, constructive discharge, termination, resignation, nurse, illegal acts, tenure, stigmatizing, accrued, continuing violation, accrue, cause of action, filing period, state law, intolerable, notified, resign, liberty interest, home health care, first amendment, discriminatory, grievance, reprisal, license, summary judgment, appointment, reputation, atmosphere, tendered, health department

**JUDGES:** [*1]

Frank G. Theis, United States District Judge.

**OPINIONBY:** THEIS

**OPINION:** MEMORANDUM AND ORDER

This matter is before the court on the motions of defendants for dismissal and/or summary judgment. Plaintiff has brought this action under 42 U.S.C. § 1983, alleging constitutional violations in her employment as a nurse stemming from her refusal to provide home health care to a patient inflicted with Acquired Immune Deficiency Syndrome ("AIDS"). By amended complaint, plaintiff also alleges several pendent state law **claims.**

Plaintiff began her employment with the Reno County Home Health Agency as a registered nurse on November 1, 1984. Her duties included making visits to the homes of patients. On September 16, 1986 the home health care staff held a meeting to discuss the care of an AIDS patient who had been referred to the agency the day before. Included among the persons at this meeting were plaintiff, defendant Seltzer, the director of the health department, and Pat Wiebe, the immediate supervisor of plaintiff who reported directly to defendant Seltzer. The assignment to this patient required the visiting nurse to evaluate the patient's weight, blood pressure, temperature, pulse, breath sounds, and general [*2] condition, as well as to provide "review and teaching on medications," and support for the patient's morale. The drawing of blood from the patient was not required.

During the September 16 meeting, defendant Seltzer said that she wanted plaintiff, Ms. Wiebe, and another nurse named Margaret Durr to go together for the first visit to the home of the AIDS patient, scheduled for September 18. Plaintiff voiced objection to this assignment. On the morning of September 18, plaintiff learned that she was to be the only nurse

to visit the patient that day, because Ms. Wiebe was attending a seminar and because Ms. Durr was apparently refusing to visit the patient. Plaintiff told her superiors that she was not willing to see the patient that day, but that she "might" be willing to see the patient the following afternoon. On September 19, Ms. Durr was "chastised" for refusing to visit the AIDS patient and at some point, was later fired by Ms. Seltzer for her refusal. Also on September 19, Ms. Wiebe told plaintiff she could accompany Ms. Wiebe to visit the patient. Plaintiff was upset and frustrated, in part because of the actions taken against Ms. Durr, and told Ms. Wiebe that she "really didn't [*3] want to go."

On September 30, 1986, plaintiff took a three-day leave of absence in order to obtain a renewal of her R.N. license, because her license had inadvertently lapsed. While on leave, plaintiff's nursing bag was inspected and allegedly found to be in disrepair. When plaintiff returned to work the next week, she received a written reprimand from Ms. Seltzer for the condition of plaintiff's nursing bag, and for her failure timely to renew her license or to inform her superiors before the afternoon of September 30 of the problem with her license. On October 8, plaintiff objected to this reprimand in a letter to Ms. Seltzer. In this letter, plaintiff indicated her belief that issuing a reprimand for these matters was an arbitrary action. Plaintiff concluded:

This entire department is operating in an intense state of stress, which is totally unwarranted. For your information, I will not resign! If this reprimand was intended For use as evidence building for termination, you may continue.

I will continue to do my duties as capably as I can, and will not hesitate to exhaust all legal remedies, if I am terminated unjustly.

Wilson Deposition, Eht. 8, at p. 2-3.

Plaintiff's deposition [*4] testimony reflects her belief that the office atmosphere became very hostile after Ms. Durr was dismissed for refusing to visit the AIDS patient. n1 On October 13, 1986, a Reno County Commission meeting was convened to discuss a grievance filed by Ms. Durr in protest of her termination. Plaintiff submitted a letter in support of Ms. Durr. At this meeting, and with plaintiff's knowledge, direction, and permission, plaintiff's husband read plaintiff's letter aloud to the Commission, and distributed copies of the letter to the news media. In this letter, plaintiff expressed her belief that a nurse should not be required to provide care to a particular patient if the nurse is uncomfortable or intimidated by that patient and his affliction. Plaintiff also stated her belief that disclosure of the presence of an AIDS patient was a matter of legitimate public concern:

It may be of interest to you to know that a majority of the patients have voiced a concern that they might be seen by the nurse who saw the AIDS patient. They, too, are afraid. The only way to alleviate fear is to provide more & better education to the general public, as well as to health care professionals. . . . If the public [*5] health department advises nurses not to mention the prescence [sic] of this disease, even to their families, how will education be provided to the general public?

Wilson Deposition, Eht. 10.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Although Ms. Durr was apparently fired sometime before plaintiff took leave, the record submitted by the parties does not indicate the exact date of Ms. Durr's dismissal.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

The Durr grievance and plaintiff's letter received extensive news coverage and publicity, and several persons inquired of defendant Seltzer into the identity of the AIDS patient. Eventually, the publicity generated by this controversy led to the disclosure of the identity of the AIDS patient, although plaintiff contends that she never divulged the patient's identity to her husband or anyone else.

On October 14, 1986, plaintiff was summoned to a meeting with defendants Seltzer and Kay Rayl, the administrative assistant to the Reno County Commissioners. Plaintiff brought a tape recorder to the meeting. n2 The general tenor of the meeting focussed on plaintiff's [*6] continued ability to be a "team member." Plaintiff also voiced some of the same concerns that she had articulated in her letter to the Commissioners regarding the appropriateness of a nurse visiting a patient with whom the nurse does not feel comfortable. Defendants Seltzer and Rayl expressed their belief that as long as plaintiff refused to visit the AIDS patient, plaintiff's continued presence at the health department would undermine its effectiveness. At several points, defendants asked plaintiff why she desired to continue in her employment under these

stressful circumstances:

Defendant Rayl: It has been a policy by this County and will continue to be a policy in the future to provide service to AIDS patients . . . . If a person from this staff, this staff, cannot deal with this policy or has a problem with this policy, then they choose, you know, to give them the opportunity to resign and go on to something else. (page 1).

. . . .

Defendant Seltzer: I've got a department to go on with. We have to get things back on track, Shellie. We can't operate like this with tape recorders and such. . . . Why do you wanna be a member of my team?

Plaintiff: I don't know. I guess it's [*7] the pay check. (pages 11-12).

. . . .

Defendant Seltzer: I don't know why you want to be on a team where you're feeling this animosity -- I -- the professional thing, Shellie, to me is that if you feel this strongly as what you put into this letter why aren't you resigning? (page 14).

At the conclusion of this meeting, plaintiff was given a short time to decide whether she would agree to see the AIDS patient.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 Defendants call attention to the fact that the transcript of this meeting, which was apparently prepared by plaintiff herself, is not verified by affidavit or by reference in a sworn deposition or in sworn interrogatory answers. See D. Kan. Rule 206(c). In light of the court's ultimate disposition of this motion and because defendants raise no objection to consideration of the entire transcript, (Dkt. 79, at 3 n.1), the court will disregard this technical flaw.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

On October 16 a second meeting between plaintiff and defendants was held. At this meeting defendants presented plaintiff with a "Letter of [*8] Agreement," characterized by plaintiff as a "loyalty oath," which plaintiff was requested to sign. This "agreement" provided for a 90-day probationary period, during which time plaintiff would be evaluated for compliance with certain conditions. The agreement provided that plaintiff "understood" the director's responsibility to establish policy in Home Health Care, and that plaintiff understood her duty to accept her assignments. The agreement also recited that failure to comply with the agreement would "be considered grounds for severe discipline up to and including termination." Deposition Eht. 12. Plaintiff signed this document, but asserts that she did so only in order to retain her position with the Home Health Care.

On October 27, 1986, plaintiff delivered a letter of resignation to defendant Seltzer. The resignation was to be effective as of November 7, 1986. In this letter plaintiff expressed some of the same grievances that had previously been aired, but also added that matters had not improved since she had signed the "loyalty oath." Plaintiff stated that she had "no option but to resign," and expressed sorrow that she had "been left with no workable alternative." Deposition [*9] Eht. 13.

Plaintiff filed this suit on November 7, 1988 -- two years from the date of her last day at work at the Home Health Agency. Plaintiff's federal **claims** are for **constructive discharge**, allegedly in retaliation for plaintiff's exercise of her rights under the first and fourteenth amendments, and for defendants' alleged deprivation of plaintiff's liberty interest guaranteed under the fourteenth amendment. Defendants move the court for summary judgment, alleging, inter alia, that plaintiff's suit is time-barred.

I. First Amendment **Claim**

All parties recognize that plaintiff's federal **claims** are governed by the Kansas two-year statute of limitations for "injury to the rights of another, . . . ." Kan. Stat. Ann. § 60-513(a)(4); see generally Wilson v. Garcia, 471 U.S. 261 (1985) (§ 1983 **claims** are to be characterized as personal injury actions subject to one corresponding state statute of limitation); Newcomb v. Ingle, 827 F.2d 675, 679 n.7 (10th Cir. 1987) (en banc). Because plaintiff filed this action against all defendants on November 7, 1988, any federal **claim** that accrued before November 7, 1986 is untimely under the Kansas statute.

Issues relating to the tolling [*10] and application of a state's limitations period are governed by state law, Wilson, 471 U.S. at 269, whereas federal law determines when a federal cause of action accrues. Ebrahimi v. E.F. Hutton & Co, 852 F.2d 516, 520 (10th Cir. 1988); Newcomb, 827 F.2d at 678. By definition, "'a cause of action "accrues" when a suit may be maintained thereon . . . .'" Ebrahimi, 852 F.2d at 520 n.6 (quoting Black's Law Dictionary 19 (5th ed. 1979)). **Accrual** is not determined at the time the plaintiff first learns that an injury is actionable. See United States v. Kubrick, 444 U.S. 111, 119-24 (1979). Rather, as a general rule, federal causes of action accrue "when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the facts giving rise to a **claim**." Hamilton v. 1st Nat'l Source Bank, 895 F.2d 159, 163 (4th Cir. 1990) (pay discrimination under Age Discrimination in Employment Act); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1129 (3d Cir. 1988) (awareness of each element of RICO **claim** necessary); Pierce County v. Elks Lodge, B.P.O.E., 827 F.2d 1324, 1328 (9th Cir. 1987) (ERISA); Baker v. Board of Regents, 721 F. Supp. 270, 275 [*11] (D. Kan. 1989) (Title VI).

The Supreme Court addressed the **accrual** of causes of action for discriminatory employment practices in Delaware State College v. Ricks, 449 U.S. 250, (1980), an suit brought under Title VII. In Ricks, the plaintiff was a black librarian who had been denied tenure at his university. At the time the denial of tenure became final, plaintiff was offered a "terminal" contract for an additional year of employment, after which time the employment relationship would be ended. The Court held that the alleged unlawful employment practice occurred, and thus plaintiff's action accrued, at the time the unfavorable tenure decision was made and communicated to plaintiff. Id. at 259. In rejecting a bright-line "last day of employment" rule, the Court noted that

the only alleged discrimination occurred -- and the filing limitations periods therefore commenced -- at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure -- the eventual loss of a teaching position -- did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that [*12] "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful."

Id. at 258 (emphases in original; citation omitted).

The Court extended the holding of Ricks in Chardon v. Fernandez, 454 U.S. 6 (1981). In Chardon, plaintiffs alleged that the employer's decision to terminate their appointment as administrators was made for political reasons, in violation of their first amendment rights. The court of appeals had held that the limitations period did not commence to run until plaintiffs' appointments ended, distinguishing Ricks on the basis that the unlawful employment practice alleged by plaintiffs was for the termination of their employment and not the denial of tenure. The Supreme Court reversed, holding that Ricks was indistinguishable. 454 U.S. at 8. The Court noted that as in Ricks, the subject of the complaint was the employer's decision, alleged to have been motivated by impermissible reasons. The Court also reemphasized Ricks' focus "on the time of the discriminatory act, not the point at which the consequences of the act become painful." Id. at 8 (emphases [*13] in original). Because no illegal acts were alleged to have occurred after the date on which the decisions to terminate were made, the Court held that the actions accrued on the date plaintiffs were notified of the decision to terminate their appointments. Id. at 8 (quoting Ricks, 449 U.S. at 257).

Defendants acknowledge that the rationale of Ricks and Chardon presents a certain difficulty in this case, because the defendants did not terminate plaintiff. Unlike Ricks and Chardon, where the employers' alleged illegal acts themselves supported a cause of action, it is in large part the effects of the illegal employment acts that form the basis of an allegation of **constructive discharge**. This is made clear from the very standard by which the viability of a **constructive discharge claim** is determined: "'A finding of **constructive discharge** depends upon whether a reasonable [person] would view the working conditions as intolerable, not upon the subjective view of the employee-claimant.'" Derr v. Gulf Oil Corp., 796 F.2d 340, 343 (10th Cir. 1986) (quoting Irving v. Dubuque Packing Co., 689 F.2d 170, 172 (10th Cir. 1982); see also Spulak v. K Mart Corp., [*14] 894 F.2d 1150, 1154 (10th Cir. 1990). Thus, although certain discriminatory acts of an employer may take place before the **constructive discharge**, the time of the **constructive discharge** is determined at that point where the aggregate effect of the employer's various illegal acts, viewed objectively, is such that working conditions are intolerable for the employee. It is at this time that a suit may be maintained for **constructive discharge** and that the action therefore accrues. See Ebrahimi, 852 F.2d at 520 n.6.

Despite the limitations of Ricks and Chardon to **claims** of **constructive discharge**, the holdings of these cases make clear that a bright-line "last day of employment" rule must be rejected where a choate violation is traceable to some earlier point. Applying these principles, the court concludes that plaintiff's **claim of constructive discharge** accrued no later than October 27, 1986, the date on which she tendered her resignation. See Leffingwell v. Sears, Roebuck & Co., 717 F. Supp. 620, 622 (N.D. Ill. 1989) (timely **constructive discharge claim** as of date on which plaintiff chose to leave

after being given ultimatum); Eure v. U.S. Postal Serv., 711 F. Supp. [*15] 1365, 1372 (S.D. Miss. 1989) (postal employee's **constructive discharge claim** accrued on date of resignation, since this was date on which plaintiff discovered or should have discovered employer's alleged misconduct); Glasgow v. North Carolina Dep't of Transportation, 522 F. Supp. 441, 443 (E.D.N.C. 1981) (had suit been filed within three years of plaintiff's resignation, plaintiff would have had a case for **constructive discharge** based on employer's first amendment violations); cf. Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1562 (5th Cir. 1985) (evidence indicating that constructively discharged plaintiff was not aware of discrimination falling outside of statute). It was on this date that working conditions had clearly become so intolerable that continued employment was no longer an option for plaintiff. Indeed, an argument can be made that the **constructive discharge** was complete as of the meeting on October 14, 1986, at which time defendants asked plaintiff why she would not resign. See Economu v. Borg-Warner Corp., 829 F.2d 311, 315-16 (2d Cir. 1987) (**claim** of "involuntary termination" accrued on date that plaintiff was clearly notified of substantial change in job [*16] status, and not on date when plaintiff tendered letter of resignation); Colburn v. Trustees of Indiana University, 739 F. Supp. 1268, 1300 (S.D. Ind. 1990) ("'It is only necessary for the plaintiff in an employment situation to be effectively notified of a discharge for the cause of action to accrue at the time of notification.'"; quoting S. Nahmod, Civil Rights and Civil Liberties Litigation § 4.17, at 262 (2d ed. 1986)). It is unnecessary, however, for the court to resolve the exact time at which a reasonable person would have viewed working conditions to have become intolerable. Under these facts, it is clear that such atmosphere had been attained at least by the date of plaintiff's resignation. Because this date is more than two years before the date on which plaintiff filed suit, the **constructive discharge claim** must be dismissed.

In anticipation of this finding, plaintiff attempts to bring her **claim** within the statute under the auspices of the "continuing violation" theory. Plaintiff contends that she was subjected to "the silent treatment" even after she tendered her resignation, and that defendants' "pattern of harassment" continued up until the day of her departure. [*17]

Under the continuing violation theory, a **claim** of an illegal employment practice:

may be based on a continuing policy and practice of discrimination that began before the statutory filing period, as long as the employer continues to apply the discriminatory policy and practice to a point within the relevant filing period, and plaintiff is not merely complaining of the continuing effects of a discriminatory practice that existed only before the relevant filing period. There must be at least one instance of the discriminatory practice within the filing period for the continuing violation theory to apply.

. . . .

. . . . The continuing violations theory may not be used to challenge discrete, unrelated acts occurring entirely outside the statutory filings periods.

Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1543, 1544 (10th Cir. 1987) (citations omitted). Courts have also applied this theory in recognition of the delay in filing caused by fear of reprisal from employers. Gray v. Phillips Petroleum Co., 858 F.2d 610, 614 (10th Cir. 1988); cf. Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1560 (5th Cir. 1985) (equitable considerations underlie continuing violation [*18] theory); Pope v. Bond, 641 F. Supp. 489, 496 (D.D.C. 1986) (continuing tort doctrine generally applies only to those torts that are by nature of a repetitive character and for which no single act is determinative). Once the termination is complete, however, the fear of reprisal no longer exists, and this theory is unavailable for any acts taken after plaintiff has been notified of the termination. Gray, 858 F.2d at 614-15. Above all, "the critical question is whether any present violation exists," and not whether a past violation falling outside the statute continues to have present effect. United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) (emphasis in original); see also Leffingwell, 717 F. Supp. at 623.

For several reasons, this theory cannot save plaintiff's **constructive discharge claim**. First, plaintiff has alleged no illegal acts taken after the date on which she resigned. At most, the hostile atmosphere can be construed as a continuing effect of the past allegedly illegal acts. Second, even assuming the existence of an illegal act of reprisal for plaintiff's exercise of her first amendment rights, the court has already determined that plaintiff was [*19] effectively terminated at the latest on the date of her resignation. On this date the tort was complete, and any subsequent illegal acts only provided further evidence of an existing injury. See Ricks, 449 U.S. at 257 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."); Pope, 641 F. Supp. at 496 ("A continuous, cumulative chain of tortious activity, however, does not include the uncorrected denial of one's constitutional rights, . . . ."). Moreover, because the termination was complete, no fear of reprisal could exist that would warrant application of the continuing violation theory.

Plaintiff was obliged to file suit within two years of the date of her resignation. The failure to do so requires dismissal of the **constructive discharge claim** based on first amendment violations.

## II. Liberty Interest

The second **claim** raised by plaintiff is that her employer's illegal acts deprived her of a protected liberty interest by damaging her future ability to obtain employment in the health field.

"A public employee enjoys two interests protected under the liberty prong of the fourteenth amendment's [*20] due process clause: (1) an interest in his good name, reputation, honor and integrity, and (2) an interest in other employment opportunities." Flanagan v. Munger, 890 F.2d 1557, 1571 (10th Cir. 1989). Regardless of the interest for which a liberty deprivation is claimed, the government's action must stigmatize or otherwise damage the plaintiff's reputation. Id. The government action must consist of the publication of information that is both false and stigmatizing, Asbill v. Housing Authority of Choctaw Nation, 726 F.2d 1499, 1503 (10th Cir. 1984), and made "in the course of the termination of employment." Paul v. Davis, 424 U.S. 693, 710 (1976). Standing alone, however, damage to reputation is insufficient, and the plaintiff must also show that the reputational harm is "entangled with some other 'tangible interests such as employment.'" McGhee v. Draper, 639 F.2d 639, 643 (10th Cir. 1981) (quoting Paul v. Davis, 424 U.S. at 701). Where the claimed liberty interest is in other employment opportunities, dismissal must result in damage to one's business reputation such that it has the general effect of curtailing the ability to pursue future employment. E.g. [*21] , Asbill, 726 F.2d at 1503; Melton v. City of Oklahoma City, 879 F.2d 706, 720-23 (10th Cir. 1989), reh'g en banc granted in part, 888 F.2d 724.

Defendants contend that plaintiff's liberty deprivation **claim** never accrued because plaintiff has failed to produce any evidence of a publication by defendants, to say nothing of a publication that is both false and stigmatizing. Plaintiff relies on three instances said to constitute a "publication."

First, plaintiff **claims** that defendant Seltzer "publicized" the damaging statements to defendant Rayl at the October 14 and 16 meetings. Somewhat inconsistently, plaintiff contends that defendant Rayl had no supervisory control over plaintiff and was acting merely as a witness. However, "such intra-government dissemination, by itself, falls short of the Supreme Court's notation of publication: 'to be made public.'" Asbill v. Housing Authority of Choctaw Nation, 726 F.2d 1499, 1503 (10th Cir. 1984); see also Polson v. Davis, 635 F. Supp. 1130, 1142 (D. Kan. 1986).

From statements made by defendants at the October 14 meeting plaintiff also infers that publication was made to members of the County Commission. Disregarding for [*22] the moment the obstacle of finding publication in such intra-governmental communications, the court finds these inferences insupportable. One of the three statements at the meeting refers only to the fact that plaintiff had approached the Commission with her grievances. The other two statements, made by defendant Rayl, indicate that the Commission supported the policies established by defendant Seltzer. Although it is possible that defendants had "talked to" the Commission, plaintiff has produced no evidence of either false or stigmatizing statements made against her.

Finally, plaintiff contends that she herself made the requisite publication when she was forced to reveal the reasons for her dismissal to potential employers, rather than lying about the **constructive discharge**. Indeed, Chief Judge O'Connor recognized the possibility of such "voluntary" publication by a plaintiff in Polson v. Davis, 635 F. Supp. 1130, 1142 (D. Kan. 1986). n3 The court agrees with defendants, however, and finds no evidence of either false or stigmatizing statements made by plaintiff's former employer in the course of her termination. Thus, candor could not have compelled plaintiff to disclose [*23] defamatory statements that apparently were never made. Accordingly, the court must also rule in defendants' favor on plaintiff's claimed liberty interest. The court does not address defendants' alternative arguments.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Defendants contend that the rule applied in Polson cannot survive the Tenth Circuit's decision in Wulf v. City of Wichita, 883 F.2d 842 (10th Cir. 1989). In Wulf, the court held that statements made by the former employer to a third party, several months after plaintiff's termination, failed to meet the requirement that the publication be made "in the course of the termination of employment." Id. at 869. The theory recognized in Polson, however, was that publication may be found in a plaintiff's voluntary revelation, albeit after his termination, of those false and stigmatizing statements made by the former employer in the course of the termination. Although it is far from clear that the holding in Wulf affects this rule, the court need not decide this issue in light of plaintiff's failure to produce any evidence of false and stigmatizing statements.

- - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - -
[*24]
III. State Law **Claims**

Notwithstanding the dismissal of plaintiff's federal **claims,** defendants urge the court to dispose of plaintiff's state **claims** on the merits.

A district court may not exercise pendent jurisdiction over a state law **claim** when the federal law **claim** is insubstantial. If the federal **claim** is dismissed before trial, even though not insubstantial in the jurisdictional sense, the state law **claim** will generally be dismissed as well. Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary. The district court has discretion to try state **claims** in the absence of any triable federal **claims;** however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.

Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) (citation omitted). The court is aware of no compelling reasons to deviate from the general rule. Accordingly, the court will dismiss without prejudice plaintiff's state **claims.** See Bath v. National Ass'n of Intercollegiate [*25] Athletics, 843 F.2d 1315, 1317 (10th Cir. 1988) (dismissal of pendent state **claims** not on the merits must be without prejudice).

*IT IS BY THE COURT THEREFORE ORDERED* that defendants' motion for summary judgment on all federal **claims** (Dkt. 71) be granted.

*IT IS FURTHER ORDERED* that plaintiff's state law **claims** be dismissed without prejudice.

At Wichita, Kansas, this 19th day of December, 1990.

FOCUS                                More Like This                          Text Only | Print, Download, Email, Fax



| Cite List | KWIC™ | FULL TEXT |

prev · Document 8 of 100 · next

| Menu: | Labor & Employment |
|---|---|
| Source: | Labor Cases, Federal and State |
| Terms: | accrual of constructive discharge claim |
| View: | FULL |
| Date/Time: | Sunday, May 2, 1999 - 5:11 PM EDT |

Search | Get a Document | Check a Citation
Sources | Clients | Options | History | ECLIPSE | Feedback | Sign-Off | Help
About LEXIS-NEXIS | Terms and Conditions

 Copyright © 1999 LEXIS-NEXIS, a division of Reed Elsevier Inc. All rights reserved.

LEXIS·NEXIS     **Sources   Clients   Options   History   ECLIPSE™   Sign-Off   Help**

Xchange

**Search**

**Get a Document**

**Check a Citation**

FOCUS| Save As ECLIPSE

SHEPARD'S®  **A**

Source:Labor Cases, Federal and State
Type:  ⦿ Boolean  ◯ FREESTYLE ™

"constructive discharge" w/p accru!    [ New Search ]

prev · Document **2 of 67** · next

| Cite List | KWIC™ | |
| More Like This | | Text Only | Print, Download, Email, Fax |

*1998 U.S. App. LEXIS 30110, ***

RUBEN MAYO, Plaintiff-Appellant, v. KENWOOD COUNTRY CLUB, INC., Defendant-Appellee.

NO. 97-4007

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

1998 U.S. App. LEXIS 30110

November 23, 1998, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1998 U.S. App. LEXIS 37430.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 96-00478. Beckwith. 7/30/97.

**DISPOSITION:** AFFIRMED.

**CORE TERMS:** limitation period, resignation, discovery, statute of limitations, summary judgment, constructive discharge, retaliation, waitresses, orally, notice of termination, unlawful practice, employment act, deposition testimony, age discrimination, state law, last date, last act, constructive-discharge, accrued, resign, lapsed

**JUDGES:** BEFORE: BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.

**OPINION: PER CURIAM:** Plaintiff appeals the grant of summary judgment for Defendant on his claim of age discrimination and related state law claims. We **AFFIRM.**

## I. BACKGROUND

In January 1993, Plaintiff Ruben Mayo, a maitre d' at Defendant Kenwood Country Club, testified at a deposition for three of Defendant's former waitresses in their Age Discrimination in Employment Act ("ADEA") action against Defendant. Plaintiff claims that after he testified on behalf of the waitresses, Defendant's club manager, James Rentschler, repeatedly discriminated against him in retaliation for his deposition testimony

On May 14, 1994, Plaintiff orally informed Rentschler that he had decided [*2] to resign. They then discussed whether Plaintiff would remain until a replacement was found. Mayo agreed to stay until June 12. On May 17, 1994, Plaintiff gave Rentschler a formal written resignation, and Rentschler informed Defendant's management of the resignation. Defendant's management decided that Plaintiff should leave immediately. On May 19, 1994, Rentschler accepted Plaintiff's resignation effective that day, but agreed to pay Plaintiff through June 12, 1994, the date to which Plaintiff

agreed to stay. Rentschler then directed Plaintiff to leave and take his possessions with him.

On March 14, 1995, Plaintiff filed his charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging that his last date of employment was May 19, 1994, and the last date of discrimination was June 12, 1994, the date through which he was paid. Plaintiff did not disclose in the charge of discrimination that he orally tendered his resignation on May 14, 1994. After the EEOC notified Plaintiff of his right to sue, Plaintiff sued Defendant in federal court, alleging constructive discharge in retaliation for his deposition testimony on behalf of the three [*3] waitresses. Defendant timely answered and raised affirmative defenses, including the statute of limitations. After discovery closed, Defendant moved for summary judgment on several bases, including the statute of limitations.

The district court granted summary judgment to Defendant, holding that the 300-day statute of limitations, 29 U.S.C. § 262(d) (West 1985), barred Plaintiff's claim. The district court found that Plaintiff's claim accrued on May 14, 1994, when Plaintiff announced his resignation to Rentschler, and not on May 19, 1994, which was Plaintiff's last day of work. The district court, therefore, concluded that the limitations period lapsed on March 10, 1995, four days before Plaintiff filed his charge with the EEOC. The district court granted partial summary judgment to Defendant on Plaintiff's ADEA claims as time barred and dismissed Plaintiff's state law claims without prejudice. Plaintiff appeals.

## II. DISCUSSION

The filing of a timely charge of discrimination with the EEOC is required before filing a claim under the ADEA in federal court. 29 U.S.C.A. § 626(d). See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 [*4] (1982). Section 626(d) provides, in pertinent part:

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed --
>
> (1) within 180 days after the alleged unlawful practice occurred; or
>
> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C.A. § 626(d).

In an employment discrimination case, the limitation period begins to run when an employee has unequivocal notice of an adverse employment decision, i.e., the time of the discriminatory act, not when the consequences of the act are realized. See Chardon v. Fernandez, 454 U.S. 6, 8, 70 L. Ed. 2d 6, 102 S. Ct. 28 (1981)(holding that limitation period began when notice of termination was given and not on date when employment terminated); Delaware State College v. Ricks, 449 U.S. 250, 259, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980)(holding that [*5] the limitation period began on the date of the alleged employment practice, not the final day of employment). See also Janikowski v. Bendix Co., 823 F.2d 945, 947 (6th Cir. 1987). In a constructive-discharge case based on continuing discrimination, the limitation period begins on the date of the last act of discrimination. See Hull v. Cuyahoga Valley Bd. of Educ., 926 F.2d 505, 510-11 (6th Cir. 1991). An employee bringing a constructive-discharge case obviously knows of the employer's final adverse action because the employee effectively determines when he or she is constructively discharged by resigning. Therefore, we conclude that in a constructive discharge the limitation period begins when the employee resigns, not the final day of employment.

In this case, the district court found that Plaintiff knew "all of the facts giving rise" to his claim for retaliation and **constructive discharge** when he orally informed Rentschler of his resignation on May 14, 1994. The fact that Plaintiff's final day of employment was May 19, 1994, is not relevant. Consequently, Plaintiff's claim **accrued** on May 14, 1994, and lapsed on March 10, 1995, four days before he filed his charge of discrimination [*6] with the EEOC.

Alternatively, Plaintiff argues that under principles of equity, waiver, and estoppel, the limitation period should not bar Plaintiff's claim because Defendant delayed until after discovery before moving to dismiss under the statute of limitations. This argument lacks merit. Defendant properly and timely raised the statute of limitations defense in both its

Answer and Motion for Summary Judgment, and did not otherwise waive the defense.

Moreover, Defendant did not mislead or abuse Plaintiff by waiting until after discovery to move for summary judgment on the basis of untimeliness. Defendant could not have successfully moved to dismiss Plaintiff's as untimely based on the pleadings under Rule 12(b)(6) because Plaintiff's pleadings, which must be accepted as true, alleged that the last act of discrimination occurred on either May 19, 1994, or June 12, 1994, both of which are within the 300-day limitation period. Therefore, discovery was reasonably proper to establish the time when Plaintiff knew of Defendant's last and decisive unlawful employment act.

Finally, Plaintiff's argument that Defendant forced him to incur discovery expenses in litigating an action that Plaintiff [*7] himself brought is not persuasive where Plaintiff has not otherwise identified any other allegedly improper dilatory conduct.

Therefore, we **AFFIRM** the judgment of the district court.

FOCUS| Save As ECLIPSE                        More Like This                        Text Only | Print, Download, Email, Fax

| Cite List | KWIC™ | |
|---|---|---|

prev · Document 2 of 67 ·· next

Menu:          Labor & Employment
Source:        Labor Cases, Federal and State
Search Terms: "constructive discharge" w/p accru!
View:          FULL
Date/Time:     Sunday, May 2, 1999 - 6:16 PM EDT

Search | Get a Document | Check a Citation
Sources | Clients | Options | History | ECLIPSE | Feedback | Sign-Off | Help
About LEXIS-NEXIS | Terms and Conditions



Copyright © 1999 LEXIS-NEXIS, a division of Reed Elsevier Inc. All rights reserved.